May it please the Court, Philip Stillman for Mr. Blixseth. Good morning. You didn't have enough yesterday? Your Honor, this is a marathon, and I've never had this opportunity before, but this is always the first time for everything in our practice of law, I guess. There we go. Your Honor, I'll just, in seriatim, I think appellate standing is a very easy issue. Mr. Blixseth was actually aggrieved as a… It's the same issue, different case. This is the confirmation of the BLX. Mr. Benjamin, have you heard, did you hear the argument yesterday? I could not attend, I'm afraid, Your Honor. But this is different, isn't it? Because in this instance, as I understand it, Blixseth, what is Blixseth's complaint exactly? Well, he has actually two complaints. One is the scope of the Exculpation Clause, which we covered in some detail yesterday. But it's a different Exculpation Clause. It's a narrower Exculpation Clause than we dealt with yesterday. Same problem, however. The issue would still be the same. Same issue. But the other part of it goes to him as a defendant, right? I'm not sure.  Well, not exactly, although that's certainly the end result, that he was actually sued. Before the confirmation of the plan, he was actually a defendant and actively litigating against… But as to that, there's pretty clear case law, which makes some sense, that says that you're not aggrieved by a plan that says somebody can sue you. Well, it's… Because for one thing, you can defend yourself in the lawsuit. Well, sure. But the test for standing is increase your burdens, you know, hurt your property rights, et cetera. But then, I mean, Blixseth happens to be sort of an insider here. But there could be authorized lawsuits in a bankruptcy against, you know, Joe. Sure. So Joe can now come in and complain about the fact that the plan… Why not? That's not the issue we have here. Because Joe, some stranger to the bankruptcy proceeding, is not the defendant in this case. This case, the… But Blixseth is a stranger to the bankruptcy proceeding, technically speaking, no? Well, no, he isn't. Not only is he a party in interest, but he does have a proof of claim on file in the case. And while we didn't make… Well, I thought that that was by the board. So you had said he's not a creditor. He's not suing this company. Well, I mean, honestly, Your Honor, in the bankruptcy court, in the trial court, we said he was a party in interest. And, of course, to have standing to challenge the confirmation of the appeal, party in interest is fine. But I did find out subsequently, to my surprise, that he did have a proof of claim that had never been withdrawn in the case. He's still a creditor. But I thought he, at some point, either said he was through it or said he wasn't pursuing it or something like that. Not that I'm aware, but I don't want to focus on that because… Well, suppose I were correct. Suppose that he had standing with regard to the exculpation clause on theories similar to the ones discussed yesterday, but as to the rest of it was more in the position of the people in the lawsuits where they were not held not to have standing. Well, I think standing is standing, Your Honor. And I think that if he has standing to challenge the exculpation clause, as we argued yesterday, I think he has standing to challenge the confirmation of the plan. And the reason I think it transmutes in this case to standing to challenge the confirmation of the plan is because the only reason he's being sued, the only reason he's an aggrieved party, in addition to the exculpation clause, is because of what we contend is the illegal assignment or the improper assignment to the liquidating trust to pursue claims on behalf of BLX when the liquidating trust is actually a trustee of another bankruptcy. And I think that that flies in the face of Kaplan. So if the court agrees that the assignment is illegal or is contrary to law in that a bankruptcy trustee, which a liquidating trustee is, cannot under Kaplan and the most recent case in the Madoff from the Second Circuit, cannot pursue claims that are assigned to it from other bankruptcies, then that leads to the fact that there is no way to approve a plan that's based on that very assignment. But isn't the case that's being pursued essentially being pursued anyway by the liquidating trust? And so it's just a question of pursuing, of sort of splitting the proceeds. Well, no. The problem in the unusual circumstance in this case is that in adversary proceeding 14, which is, as we discussed yesterday, is being briefed, the liquidating trust based the claim on collapsing these promissory notes from BLX to the Yellowstone Club into BLX, I'm sorry, liquidating trust against Blixeth, piercing the corporate veil of BLX and holding Blixeth responsible for these notes, saying that they were not notes, they were distributions and the notes were a sham. Now, in this case, in the BLX confirmation, the whole plan is to sue Mr. Blixeth again on those same notes on behalf of BLX when in the last AP 14, liquidating trust was claiming that BLX was a sham and pierced the corporate veil in order to hold Mr. Blixeth liable. So if you play that out to its logical extreme, Mr. Blixeth, they're looking for a double recovery. Not only the recovery against Mr. Blixeth in AP 14 from saying it's a sham, but now on behalf of BLX, who they don't represent as a trustee, seeking to go after Mr. Blixeth on that same amount for a double recovery, which needs to be limited. But they're not looking for a double recovery. They're looking for one recovery to be split. Well, they are looking for a double recovery because they already have a $40 million judgment in AP 14 and now they're looking for the full amount of judgment not offset by in peri delicto defense that Judge Kirscher imposed in the note case. Or would that just be a defense? I mean, just raise it. Oh, it has been raised. I mean, Your Honor, I'm not sure if you may not be aware of this, but the judgment has been entered in what I call the note case, the case in the district court that was brought by liquidating trust on behalf of BLX. It was entered three, four weeks ago. That's one in the central district? Yes, that's right. $219 million, Your Honor. And did you ask for an offset? Yes. And did he grant it? No. So there's a number of problems, obviously, with that case. But my point, going back to Your Honor's question about how these are different and why the standing issue comes in with regard to the improper assignment, had there been no improper assignment, BLX would or would not have pursued Mr. Blexeth, and therefore Mr. Blexeth's burdens, property rights, et cetera, are changed. And so if this court were to impose Kaplan and it followed the Second Circuit in Madoff, there wouldn't be standing to, by the liquidating trust, to bring those claims on behalf of another bankruptcy estate against Mr. Blexeth. What possible rationale is there for saying that? I mean, first of all, this isn't really a trustee, exactly, but assuming even it's due to the same rules, I mean, essentially it's like hiring an agent. You know, you're suing. Well, why can't you do that? Why can't this liquidating trust do that? Well, if it was simply a matter of hiring an agent, an LLC, Phillips-Dillman LLC, to pursue that, you're absolutely correct. But the problem here is that bankruptcy trustees are governed by very specific statutory limitations. And one of those statutory limitations is that the bankruptcy trustee can only go after claims of the estate and claims belonging to the debtor. It cannot take assignments from other creditors or other estates and then pursue those. And it's actually, we've been whipsawed between the positions taken in BLX, in this confirmation, and in the central district case, which I call the note case, by the liquidating trust on the one hand saying, we can take that assignment, we're not a trustee, and then in the central district saying, you can't sue us for counterclaims because we're trustees and protected by the Barton Doctrine. And that is the problem, the very problem, with allowing claims to be brought by a trustee as compared to regular claims. Well, the fact that they are entities protected by the Barton Doctrine doesn't make them trustees for purposes of this doctrine. Well, in this case, they are. They claim to be trustees, liquidating trustees, and therefore protected by the Barton Doctrine. So we got it both directions. And so for that reason, the confirmation of the appeal was improper for that reason alone. But then if you take a look the next step down, which is how much of a claim has been allowed, even the trustee, even the liquidating trustee of the BLX case, couldn't explain why the only claim that he was pursuing, this claim against Mr. Blitzeff, he couldn't explain why he just didn't say, instead of $40 million, whatever the AP14 judgment turns out to be, that's the claim you're allowed in the bankruptcy case, in the BLX case. He could never explain the rationale for not doing that, and even Judge Kirschner was kind of puzzled by it, although he ultimately approved it. So between the assignment of the claim... Your Honor, the district court held with regard to this appeal, not that there was no standing, right, but that it was equitably moot, is that right? What did the district court hold about this appeal? The district court held in this appeal that Mr. Blitzeff left standing. And it didn't address an equitably mootness argument? No, Your Honor. And in fact, the standing issue wasn't even briefed. The court came out with the rest of these cases where Judge Haddon found lack of standing all the way through, and we had no oral argument on the appeal in the district court. So the other problem, of course, which Mr. Blitzeff does have standing to assert, is this was an improper settlement when the trustee settled this claim with the liquidating trust without following Rule 9019, which is the same problem we had in the Yellowstone Mountain Club case. So these all infect the confirmation process, in addition to the exculpation clause, which I think we've discussed at length. And I'll just note that on Friday I received a request for judicial notice. I'm not sure if the Court's seen that. That was filed by the appellees, and we would just object to that. It's a seeking judicial notice of memorandum granting summary judgment by the district court in the, what I call the note case in the central district. How can you object to a public document, a judicial notice in a public document? Sure, Your Honor, because it's certainly proper to take judicial notice of the existence of a judgment, but you cannot take judicial notice of the factual findings within that document. And so to the extent that there's a claim that the Court can take judicial notice of the memorandum included, attached to the judicial notice, we object. Certainly the judgment is subject to judicial notice, and I don't see it. Even though it's late filed, and it could have been filed a long time ago, I don't think. Pretty incoherent. I'm sorry? That's pretty incoherent. Incoherent? I'm sorry, Your Honor. We take judicial notice of documents. What we do with them, once we notice them, it's just like evidence. Judicial notice is subsidies for evidence. The fact that something is admitted as evidence doesn't mean that the Court adopts everything, a document, admitted as evidence. Judicial notice is just another way of getting something into the record. And once you get it into the record, you can argue about what it means or what significance it has and all that. But it has nothing to do with judicial notice. Well, in Wyatt v. Tavoon, which is 315 F. 3rd 1108, this Court said judicial notice of factual findings in other cases improper under Federal Rule 201. And that's the only point that I'm making, Your Honor, that not that the existence of the document is in some dispute. The document purports to be a document that it is from the file. I don't dispute that. What I dispute is that whether the contents of the memorandum can be admissible under judicial notice as compared to the existence of the document. But does the levity of the exculpation clause have anything to do with your major issue, i.e., the lawsuit? Yes, Your Honor. Why? The exculpation clause includes as an exculpated party agents of the debtor. And one of those agents of the debtor clearly under the confirmation order and the plan is the liquidating trust. And it binds as releasing parties anyone who holds a claim in the bankruptcy. And, of course, Mr. Blitzeff, as I said, has a file proof of claim. And so that directly implicates his any claims he may have against the liquidating trust and releases those. But it is much more narrow than the exculpation clause that we argued yesterday. Does that have anything to do with the fact that this lawsuit went forward and did he try to assert a counterclaim? Yes, we did. Yes, we did. We did try to assert a counterclaim. And was denied on the basis of the exculpation clause? It was actually denied on the basis of the Barton Doctrine. Okay. So the exculpation clause hasn't had any impact on anybody about anything? It didn't. The Court didn't. Although we raised the issue of the exculpation clause, the district court in the central district didn't reach that issue. Well, I understand that. But I'm trying to see how any standing he may have on the exculpation clause has anything to do with the rest of it. And it doesn't seem to. At this time, it simply is we don't have any concrete claims right now until, and hopefully the central district case is reversed, and then we would have claims for attorney's fees. We'd have, because of the notes that have been sued on, the releases that have been sued on, we have claims for indemnity. All of these would fall within the scope of the exculpation clause and how it's drafted today. What? As agents, because it includes not only the professionals, which is the quasi-judicial immunity that we discussed yesterday, but also the specifics of, for example, the liquidating trust. And that's the real problem. And it shouldn't be carved. If liquidating trust is going to be a regular plaintiff or a regular defendant, they can't hide behind the Barton Doctrine, and they shouldn't be able to hide behind the exculpation clause. Much more than your time, so. Yes, Your Honor, thank you very much. I appreciate it. Thank you. May it please the Court. Daniel Benjamin on behalf of the trustee, Carl Eklund. Let me start out with one of the points that counsel made early on. He said that standing is standing. I'd like to refer the Court to their reply brief, in which they actually cite the Supreme Court in Daimler Chrysler on page 28, which states, a plaintiff must demonstrate standing for each claim he seeks to press. And so we have basically three issues here. We have the assignment of the claim to YCLT. We have the exculpation clause. And then we have the question of whether or not the allowance of the YCLT claim was appropriate in the plan. I want to start with the allowance of the claim. I did not hear any argument from counsel as to how his client is injured by the allowance of the claim. He states now all of a sudden that, well, maybe they are a creditor. We cite on page 18 of our brief, footnote 7, multiple places in the excerpt of record where counsel for Mr. Blixeth disclaimed any creditor status. He is only in this case as a party in interest. That is the clear record. His counsel can't disclaim being a creditor previously and then suddenly on appeal want to change that position. So with regard to the allowance of the claim, the way the claim was allowed was that YCLT could recover the greater 40 million or if there was a reversal as to adversary proceeding 14 and the claim went up to 200-some million, then YCLT could recover that. That is an issue that only affects the creditors of the estate because the other creditors' claims could theoretically be diminished by that claim allowance. It does not affect a party in interest such as Mr. Blixeth because he's not going to recover from the estate whether the YCLT claim is 40 million or 200 million. Next issue is the assignment of claims. I realize that, Judge Berzon, you brought up there's multiple authorities on the fact that a party who is, in essence, a stranger to the proceeding whose only effect based on the proceedings is that there's authorization to sue them, which is all that Mr. Blixeth is, that person does not have standing to come in and delay the bankruptcy. If they want to challenge the assignment, they're free to do that in the case brought against them pursuant to the assignment, and, of course, that occurred here in the Central District. We originally requested judicial notice of the decision that had already issued at the time we briefed that said that, in fact, YCLT did have standing in the Central District. That case now has reached judgment, and we do believe that at this point. Not to get into a case that's not before us, but how would you go about challenging that in that case? You're being sued, right? And what would you say?  I don't get it. How do you do that? It's sort of like saying you sue me on contract, but you really can't sue me on contract because assignment of the contract to you is invalid. Well, yes, and in that case you would challenge standing, which is standing of the assignee, the person who received the assignment. Their standing would be challenged, and, in fact, that happened in that case. It was an unsuccessful challenge. Was it addressed from the merits, or was it determined on the basis that there was an approved bankruptcy plan allowing it? It was addressed on the merits. Of course, part of that is the plan, but the overall question here is not whether or not the plan was entered. Everybody admits the plan was entered. The question is whether or not that plan was appropriate. In other words, could the YCLT receive lawfully an assignment? And the Central District addressed that issue on the merits rather than on the ground that they couldn't address it? Exactly, yes. They looked at Kaplan and Williams and the other cases that have been cited by Mr. Blixith right here. They resolved it on the motion to dismiss, which of course being a motion to dismiss on jurisdictional grounds, they can look at evidence as well if they want to, and they can put in evidence. And now, of course, that case has been reduced to a final judgment. So what is the connection of the Exculpation Clause to all of this? Not much, Your Honor, in our view. The Exculpation Clause here is narrow. It has to do with the actions of the trustee and his agents in essence getting the plan adopted and the like. What's important to note here is that the assignment, which is what YCLT is acting under, had already been approved months earlier. So because the assignment had already been approved, there's not even really an issue here that the Exculpation Clause would apply to YCLT. Second, the Exculpation Clause, as with ordinary Exculpation Clauses in bankruptcy, does not cover intentional acts. If somehow Mr. Blixeth ever prevails that there was an intentional breach of the contract and that he should not have been sued and now his attorney's fees should be paid or he should be indemnified or the like, the Exculpation Clause is never going to come into the mix because this is an intentional allegation here of an intentional breach of contract to the suit. And then the last issue, going back to where we are now in the Central District, they did raise this issue that they thought that the marriage settlement agreement that they allege gave rise to the attorney fee right and so on, that all that prevented YCLT from bringing the Central District case. They've lost on that issue and they've lost on the merits on summary judgment. And, again, we now have a judgment. So we have an issue that is now moot. If we look at the judicial notice issue counsel is raising, certainly we can look at the judgment and the underlying decision to see if ---- It's not entirely moot. It may be preclusive. Well, and preclusive would be my second point, Your Honor. As the Court knows, a federal court judgment where there's federal claims at issue, as occurred there, is preclusive once the judgment issues, even if they are filing an appeal. So it would be preclusive as well. Turning then, I did want to finish up on the assignment. I just wanted to note, if we were to consider the merits, there's a very important difference between this case and Kaplan or Williams or any of the cases they have cited. That is that YCLT is a creditor on the estate. So when they talk about these bankruptcy trustee cases where, for example, the Bernie Madoff trustee tried to bring claims on behalf of the creditors of the estate, the problem was that the Bernie Madoff trustee and his estate that he controlled did not itself have a claim. Here YCLT had a claim on the BLX estate that made it the same as any other creditor. What the trustee here for BLX did then was to make an assignment of the estate's claims to a creditor, which has been approved in PRTC and other cases cited in our brief. At that point, there's a unity of interest. It's not as though, again, in the Madoff case, there was the risk that maybe other creditors wouldn't be embraced within the trustee's lawsuit. That's not the case here. There's only one creditor's claim at issue. It's the BLX estate's claim. That's been assigned to a single creditor that has the resources to pursue that claim and has an interest in standing in pursuing that claim because it itself is a creditor on the estate. That's very different than any of the cases that they've cited. Did you argue equitable mootness at all? Yeah, I did want to touch on equitable mootness, and I don't know, obviously, what was said at argument previously. I do know that in the Thorpe case, this court did say that the first step is see if a motion for a stay was even filed. If the motion for a stay was filed, then you can move on to the next step. And, obviously, sometimes motions for a stay are denied. And, in fact, counsel cites a different part of Thorpe talking about, well, if the stay is denied, that doesn't necessarily mean that the claim is moot because the person's preserved their rights. But here, there was never a motion for a stay. Furthermore, what we have here are continued expenditures by YCLT to pursue the litigation after the failure to make the motion for a stay. So we have harm to a third party, and we have continuing expense. If Mr. Blixeth wanted to preserve this issue and preserve himself against equitable mootness, he very much needed to file for a stay. Last issue I did want to make sure I noted, the entire fact that I don't think counsel mentioned it, that they're even trying to appeal the assignment order or the assignment. There's just no jurisdiction over that. The assignment occurred at the end of August of 2011. They did not file an appeal until after the plan was adopted in March of 2012. An assignment order, again, PRTC case that I've referred to for other points, that was such a case that also involved an assignment order, that is a final and appealable order at the time it occurs. In fact, because it was a final order, the litigation by YCLT, by the Yellowstone Club, Liquidating Trust, that litigation commenced in October 2011. Because the assignment was already final, the confirmation order doesn't allow them to suddenly bootstrap the issue and suddenly say now they have a timely appeal. They don't. Actually, they never even challenged the assignment order when it occurred, but they needed to have challenged it and then appealed it. They didn't do those things. Does the Court have... That's a lack of jurisdiction argument? Lack of jurisdiction as to the assignment order, yes, Your Honor, because that could have been appealed. And what's the case you cited again? In re PRTC, involved in the assignment order, and we also cited several... Is it in your brief? It is in our brief, yes, Your Honor, as are several other authorities involving assignments. I'm sorry? In PRTC? Yes, Your Honor. It is cited on page 32 of our brief, I believe. Let me see. In your index, you say passive. Yes, which is not very helpful. It is cited on page 32 for this particular point. It's a very relevant authority, unfortunately, Your Honor, on multiple points. So the first full paragraph of page 32. We also cite in re Olson, which is... In re PRTC is a Ninth Circuit case. In re Olson is similar, but an Eighth Circuit case. Both say that you could appeal an assignment order when it occurs. Okay. I mean, you cited it for other purposes as well. Yes. Okay. If the Court has no further questions. Thank you. Thank you.  Would you like to take a minute for rebuttal? Thank you, Your Honor. A couple of things. The allowance of the claim issue, if the amount of the claim was reduced, then it would obviously decrease Mr. Blix's liability. So if AP 14, for example, take a hypothetical, this Court reversed AP 14, found that it was barred by whatever illegal doctrines there were, by limiting the claim, that would eliminate any burdens on Mr. Blixeth. And so that is why I think the Court erred in allowing a finite amount of $40 million, rather than just say, whatever the amount of the AP 14 claim is, because they're both based on the same notes, this is what it's going to be. Whatever that amount of AP 14 is, that's what your claim will be. And if it's zero, it's zero. If it's otherwise, it's unfair to anybody. And that like … I'm really confused. I don't understand this argument at all. Sure. I'm sorry, Judge Berzon. Here's the problem, and it is confusing, because the same transaction was collapsed in AP 14, as is now being sued upon in the BLX confirmation issue. The same factual determinations were to be determined. Well, it's even more so. It's the same notes. Okay, fine. So therefore, that seems to make it less of a problem, not more of a problem. No, because in the BLX confirmation, the trustee allowed a claim for liquidating trust of $40 million, or anything more that might be gotten from AP 14. Right. So they're going to stand and fall together. So what's the problem? Because it should have been the opposite. It should have been they're entitled to whatever that claim is worth after the AP 14 is decided on appeal. And if that amount is zero, the claim of liquidating trust would be zero, because it's the same claim being asserted twice. And the same problems are … Your problem isn't what the … or more. It's what the $40 million. Correct. Yes. And so that would substantially reduce any liability to Mr. Blitzeff by simply providing, and Judge Kershaw was actually a little confused about this and never got an explanation from the trustee. Why not just say whatever the AP 14 judgment is, it is. The second thing was the counsel raised the issue of challenging the assignment. Well, when the assignment was made, Mr. Blitzeff wasn't in a grieved party. Just assigning it to liquidating trust had nothing to do with Mr. Blitzeff until such time as they filed the lawsuit. And then once they filed the lawsuit, the only way to challenge that assignment was through the confirmation of the plan. No, it wasn't. It was challenged in the lawsuit, which seemed like the appropriate way to challenge it. Well, the problem with challenging the lawsuit was because the district court had a record from the bankruptcy court by that point, by the time it was heard, and they just said, well, the bankruptcy court has approved it, so that's the way it goes. And same thing with the judgment, the summary judgment. It was race judicata on the collateral estoppel from the AP 14, which may or may not be solid. So the district court never made independent determinations on that issue. I was just told that that wasn't true with regard to the assignment by your opposing counsel. So why were you not telling me the truth? Well, I believe it to be the exact. While I was hearing that, I was looking for the decision on the motion to dismiss that we filed. And I believe – I have not read that district court. And, Your Honor, I'm not sure how important the issue is because how do you challenge the assignment in the no case when it's based on a ruling in the bankruptcy court? That's the problem we have. And the exculpation, counsel said – How does your client get to challenge the assignment at all? My client gets to challenge – He's not a creditor. He's not the debtor. He's not a party to the bankruptcy proceeding. He's just a guy who's being sued. Well, he was a party in interest. He was a party in interest in the bankruptcy proceeding. And he is being sued. So that – Let's say the bankruptcy judgment commits all sorts of egregious errors in administering the bankruptcy state. What does your client have any say about that? Anything to complain about any more than anybody on the street? Simple. Because unlike someone who's just off the street, he is directly involved in the litigation. And if that were improper, then he would not be involved in the litigation. And can't the litigation be – That's too darn bad. That means that he wishes it had been different. But why does that give him a legal right to challenge it? What's possible? Why does he have to interfere with the administration of the state? Because he doesn't happen to like the consequences, one of the things the bankruptcy court does. Well, to the extent that – What we're really talking about is standing here, Your Honor. All right. Call it standing. And so standing has specific requirements that are not particularly high level. A party agreed – You have to have not only an injury, and that's not particularly high for an injury, but you also have to have some sort of legal right. Correct. You could be injured by all sorts of stuff that happens, and you have no standing at all to challenge it. You're right. For example, no taxpayer standing on most of the stuff the government does, although you may feel totally aggrieved about that. You can't sue about it. So the fact that he doesn't like or even suffers adverse consequences, why does that give him a legal right to challenge the administration of the state? Well, if he is a party in interest withstanding to object to the confirmation of the plan, and the plan imposes burdens on him, and they're real burdens that are being imposed on him, and the only way to challenge that burden is to appeal the confirmation of the plan, to me that gives him a far higher level of involvement and interest in the case than Joe off the street. Why? Because it's directly – it's impacting his interests in his property. Well, suppose some corporation decided to sue somebody and didn't do it right, didn't pass the right resolutions or, you know, did something internally wrong. Could the person sued go and bring the lawsuit saying, you can't sue me because you didn't do it right? I would think so, Your Honor. You would? Sure. I mean, that would be a defect in the corporate ability to bring the action. I mean, Joe off the street can just say, you know, you've decided to sue me, but you didn't do it, but the corporate niceties weren't followed, so therefore – I mean, not I'm defending the lawsuit on it, but I'm going to join the lawsuit because you can't do that. You mean as a stranger to the initial lawsuit? Right. Oh, no, of course not. No, a stranger to the corporation. Oh, yes. No, I think it's – I'm not sure it's a good analogy in this case, but it does go, I would think, to the corporate authorization and standing of the corporation to bring the action as a party. If the corporation is not authorized properly to bring the action, then I think that as a defendant in that case, you certainly would have an opportunity – At best as a defendant, which is questionable, but at best as a defendant. Right. And as a defendant, I think you would be able to raise that, and in fact, many people do raise that, lack of corporate formalities, lack of a vote. Many different times I think that's raised in litigation when a corporation hasn't properly authorized the commencement or the defense of a lawsuit. No, I don't think so. Let's say you live in a neighborhood and the corporation decides to build a cement plant, right, and you don't like it, environmental impacts, you know, all the stuff that has to do with it. Can you sue and say, well, the way the corporation adopted that resolution, the board of directors didn't properly vote on it? You can't do that. You can't do that. You have to sort of, you know, you can challenge substantive action based on, you know, noncompliance. Nuisance or CEQA or whatever it is, environmental impact reports. All those things, but you can't say, I have a right to challenge the way the corporation made the decision because the notice to the shareholders or the notice to the board of directors was defective. You can't do that. So I don't see how you can do that in this case. You know, your client has to sort of live with the fact that this decision was made and defend the fundamentals, and I'm happy about it, but that's the way it is. Well, Your Honor, in the example you gave, I certainly agree with you, although I would probably attempt to show that it was that they lacked corporate authorization to bring whatever action that they did. That may not be a winning defense. Well, what good would it do? It's not a defense. Can you go into court and say, hey, I want to stop this construction going forward because the corporation didn't comply with its own charter in whatever they have, articles or whatever they're called, and they didn't hold a proper shareholders meeting or board of directors meeting to authorize that. You can't ever do that. It's just a question. And what you're doing here is quite analogous to that. Well, I think it's one step removed from a total stranger challenging the failure to follow the internal structure, the internal voting policies of a corporation, although, of course, there's oftentimes a challenge on derivative standing and so forth, which kind of impacts upon a third party raising the defenses of a corporation. But I think in this case, it's one step removed for that because Mr. Blitzeff, in terms of standing, is actively involved in the bankruptcy. He's a target of the bankruptcy. He is standing in the bankruptcy. And so far, if he's agreed by that, like an exclamation clause, to that extent, he can challenge it. But this is a very different kind of thing you're seeking to challenge, and that is a decision made that doesn't affect him at all, except that he happens to be the guy who gets sued. Well, Your Honor. But anyway, I think we've exhausted. Yes, Your Honor. And if I could leave you with this, on the exculpation clause, which was raised by my colleague, he said that the exculpation clause is limited to tortious claims and not contract claims. And just like we argued about yesterday, the plain language of the exculpation clause contains no such limitation. So once again, we're back on that. That's right. He said that, and it's true. It's true. So, I mean, it's one of those things where now we have extrinsic evidence on what the meaning of a clause is that doesn't say what it's – that doesn't say. Did you note opposing counsel's argument that this is jurisdictionally out of time, that appeal is jurisdictionally out of time? On the assignment? Yes. Yes, I did. And we've addressed that in our brief. And obviously, I disagree with that. He relies on PRTC. Yes. The PRTC case was simply – that was an assignment of a claim by the bankruptcy trustee to a creditor to pursue and then split 50-50 with the bankruptcy estate of any success. And the challenging party, Dukers, Bradley, and Metzer – and PRTC happened to be a client of mine. I wasn't involved in that appeal. And Dukers, Bradley was a law firm who, one of the claims that was assigned to the creditor,  And Dukers, Bradley had a – had filed a proof of claim, a very small one, $9,000 legal fees. And this court, Ninth Circuit, held that Dukers, Bradley had standing to challenge the assignment of the claim to a creditor by virtue of it being a – having filed a proof of claim in the bankruptcy, even though they were the target – the harm was going to be the target – that they were the target of the litigation. But you haven't answered the timeliness argument. Well, it – Which is what I asked you about. I'm sorry. I don't remember – You're so carried away with the case. I'm sorry, Your Honor. Sometimes I get so excited about the PRTC case, and I see it all the time, and having been involved a little bit. But I don't remember that this – You don't have an answer to a public counsel's argument. I don't. Well, I – That's – you don't have anything to say. I do, but not in – There's no point in continuing if you don't have anything to say. I do have an answer, but it's not in connection with the PRTC case. But I don't – because I don't recall the PRTC case dealing with the timeliness issue. All right. What is your answer? My answer is quite simple. When the assignment was made, we had no standing to challenge it because there was no – we weren't in an agreed party. All it was was an assignment of a claim. And – but when we did have – You became an agreed party shortly afterwards. I'm sorry, Your Honor? You became an agreed party shortly afterwards by your right. Yes, approximately. And the appeal was filed another year past that, right? Correct. Well, it was about a – So, okay. The claim that was assigned was a claim directly against Mr. Flickstats. That's what it was, right? That's correct. It was an assignment to a liquidating trust of that claim. Of that particular claim? Of that particular – And they already had an ongoing lawsuit connected to it? No. The AP-14 didn't exist yet? That had already been decided. Well, that's ongoing. Well, I mean, when I say it was already decided, it was not – it was – it was – went to the district court and hung around there, and then the district court dismissed it for lack of a finale, and then – so it was still circulating. But the actual trial and the judgment was already over at that point. Well, I think that if you otherwise had standing, the fact that there's an assigned claim directly against you that was assigned for the purpose of suing you wouldn't be good enough? No, Your Honor, because at the time – if the time it was assigned, it was just an assignment. And the time to challenge that assignment was when it was incorporated into the plan, and then the plan was confirmed, because when the plan was confirmed, that was the time that we had to challenge anything that was going on inside the plan. It was already happening by then, right? We had already been – we had already been sued. The assignment took place, let's say, September 1. We were sued October – Mr. Lipset was sued October 12. Months and months later. And then a month later, and sometime in December, I believe, was – or a little bit later, the final third amended modified plan was approved. I think it might have been March was the end resulting final approval of it. The judge, quote, denied – overruled our objections and held it in abeyance for three months and then figured this out with the amount of the claim, because the amount of the claim was the issue. So my point is simple. It's simply that the time to challenge under Sylmar Plaza is when the confirmation is – of the plan is done, not at the time of the assignment, because if we went in there and challenged the assignment at the time, assuming for the sake of argument that it's a final appealable order, which I believe that there's arguments on both sides, but assuming that, we weren't aggrieved at that time. It was just an assignment of a claim that we would not be – we were not aggrieved against until such time as, A, we were sued – Mr. Lipset was sued, and, B, the plan was confirmed. And here we are arguing the plan confirmation. That's why the appeal was timely as to the assignment. And I know I've taken a lot of your time. Thank you very much, Your Honor. Okay. Thank you. So we have another.
judges: KOZINSKI, PAEZ, BERZON